Thank you, Your Honor. Good morning. My name is James Dawson. I represent Mr. Lenny Lee, and this is an appeal of his conviction. As the Court knows, Your Honor, I am sharing my time today with co-counsel. You've raised a lot of issues. What do you want to talk about today? I'd like to talk about the motion for new trial, Your Honor, and the duty of prosecution to disclose certain evidence to the defendant. I know that's one of the smaller aspects. I'm not going to address the others. Is this the waitress's contact information? It is, Your Honor. Thank you. Your Honor, a fundamental precept in our system is that the defendant has an opportunity to take a look at, review, and contest evidence against him and her, what happened here. And let me step back a little bit. There's no question. Mr. Lee was guilty of something. Typically, this would be a state prosecution. What we're talking about is illegal gambling in the Vietnamese community in San Jose. That's not what happened here. What happened here is that the FBI was contacted, fine, and the FBI had a cooperating witnesses and informants. And it turns out that those individuals, I'm going to call them the two sisters, if I may, who ran the illegal gambling cafe, at least one of them, the one that Mr. Lee was associated with, were the only witnesses to certain issues which we believe go to the heart of the case specifically. Counsel, forgive me for interrupting, but your time is ticking. If you could correct me if I'm misunderstanding the facts on this, my understanding is the court ordered certain documents produced. The court later found that the defense, forgive me, the State, had taken it upon itself to redact contact information, which is these witnesses' names, the waitress's names, is my understanding. The court expressed concern about that, for sure. And so here's my concern as a former trial court judge. I think the record, but I want to be corrected if I'm wrong, is that this issue was not raised during trial at a time where the court could have done something about it. And I'm — and then my second concern is whether or not there's really a showing of prejudice on this concerning issue. Let me, if I may, Your Honor, address the second concern first. All right. And the issue of the identity of these witnesses is central, was central to Mr. Lee's defense, not because Mr. Lee was engaging in criminal activity, but whether or not he violated the 18 U.S.C. 1955 and whether or not he conspired to do that. That has elements of the number of participants who involve over a certain period of time, according to this Court in the Gilley case cited by the government. So the question is, how many people were involved in this enterprise during what period of time, and all of the evidence, or the only evidence, as far as I can tell, came from the sisters. So the question is, would the evidence of someone else who was there, would that be favorable to Mr. Lee? Perhaps to show that there weren't five people within 30 days, or what is it exactly? That and more. The — and it's also impeachment evidence, Your Honor. The sisters testified, as I understand it, this was the only enterprise that they were involved with. Not true. The waitresses, as I understand it, worked for them in another enterprise doing precisely the same thing, so there's impeachment. But it has to do with the number of individuals involved within the 30-day period. Ginsburg. Let me just ask. There appears to be testimony regarding the involvement of Lee, Tran, Dung, Ding, Tu, Nguyen, Kieu, Nguyen, and others, isn't there? Yes, Your Honor. Doesn't that supply the right number? It would if the testimony were not challenged, and that's the point of the argument here, if Your Honor. But the district court rejected the motion on the basis that it was speculative. It did. And given what was on the table before the district court, why wasn't the district court right? Well, the district court could be right. That's Judge White. He was right many times, as the Court knows. However, it's Mr. Lee's position that it is not fair and it doesn't make sense, Your Honor, to redact the names of witnesses who may be exculpatory for purposes of guilt or certainly may have something to say in terms of the credibility of the only witnesses, going back to the Court's question about all of these individuals who purportedly were involved. And the issue then really gets to, well, why wasn't it brought up before? Was there a waiver? And I don't know what the answer is to that other than to say the motion was made after the trial, and Judge White did find that, first of all, he ordered this information to be turned over. He wasn't aware that it wasn't turned over, but then he said in the order denying the motion for new trial that, well, it sounds like it's speculative. And the question, of course, is, well, how would we know that without getting a hold of these witnesses to find out what they have to say, and does that or does that not go to something central to the elements of the crime or something else? I don't have an answer in terms of the waiver issue, Your Honor, other than Judge White says, when he's addressing this, well, the police officers testified. You could have asked them in front of the jury the names of the witnesses. It doesn't sound to me like that's a practical solution, because he also says in the order denying the motion for due trial, well, who's to say you would have found them? Who's to say what they would have said? So I don't believe that there was a waiver. There certainly would be an inference that would be drawn, I suspect, that it couldn't be that important if issue wasn't taken before the trial. But my understanding is that the materials were turned over, redacted, unbeknownst to the judge, and counsel didn't immediately say, I don't know, you know, we can't get a hold of these people. Then there was the trial, then the motion for new trial. I don't believe that a waiver argument holds a great deal of weight in connection with what we consider to be a basic due process issue. And the question becomes, who is responsible for articulating what these witnesses would have said or not said the best we can do? Is it they were there? They in all likelihood would have addressed the five persons within a 30-day element. They were there as much as the sisters, and the sisters' testimony in that regard, as far as I can tell, was unrebutted, and that is the basis of the conviction. Based upon that, we believe that Mr. Lee deserves a trial, with all of the witnesses who have something to say about that element, in order to make a determination as to whether or not he violated a Federal statute or perhaps something else. And I believe my time is up. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court, David Annicarico for Appellant Tran. And would you move the microphone just a little closer? Surely. Thank you. Thank you, Your Honors. And if I may, I'd like to reserve two minutes for rebuttal. I'm going to focus on two issues. First, the possibility of separate conspiracies. And second, Mr. Tran's inability to pay the $5,500 fine. But if the Court has questions about any of the other arguments, I'd be happy to answer them. First, the jury could have found that Mr. Tran wasn't involved in a broad conspiracy that included multiple cafes, but was only involved in a separate conspiracy at Home A. The District Court, therefore, plainly erred by not giving a unanimity instruction. The District Court should have instructed that the evidence was susceptible of separately operating conspiracies. If you, the jury, find separate conspiracies, you have to be sure that you found one or the other defendant, or both, participated in. We're looking for any substantial showing that there was a real possibility of jury confusion, right? Yes, Your Honor. And it strikes me that the wiretap where these two, your two clients were talking to each other is pretty tough evidence for you. Do you want to go to that? Sure. There's no question that Mr. Lee found out about what his buddy, Mr. Tran, had separately been doing. In other words, Mr. Tran was involved with a person that Mr. Lee knew nothing about. He was already doing some gambling operation there. But Lee was calling Tran and telling him about this, and Tran was reporting back, no, I've already got it. I've already taken care of this. It really sounded like they had a joint objective there. They did, and they may have worked together in the past. But it doesn't show that Mr. Lee was involved in a multi-café or a broader conspiracy, alleged conspiracy, to conduct gambling at multiple establishments that he knew of or agreed to assist in a broad multi-café operation. So if there are two plausible constructions of the evidence, and you didn't tender a unanimity, or your trans client did not tender a unanimity instruction, why is that plain error? Because the standard is a genuine possibility of juror disagreement. The court has a sua sponte duty at that point to instruct on unanimity, and that genuine possibility exists here. Mr. Tran had his own thing going at Home A before Mr. Lee ever tried to get involved, showing that he was not just a cog in Mr. Lee's operation. There was no evidence that Mr. Tran knew about or agreed to support Mr. Lee's activities elsewhere. And there was also no evidence that Mr. Tran's benefits were dependent on the success of the entire venture. Mr. Tran was getting a cut only of what was going on at the Home A café, nothing to do with Cao, which virtually all of the government's evidence was about Cao, including the critical elements that the operation lasted for at least 30 days or made $2,000 in a single day. None of that was proven as to anything that Mr. Tran was apparently involved in. Your client's defense at trial — well, actually, this is my question. On appeal, your client's defense is that he was involved in an illegal gambling operation, but it was a different one, right? And it didn't involve five people within 30 days, or the government didn't show that, I think. And I'm trying to figure out how expressly that was articulated before the jury. In terms of the argument to the jury? Right. Because you're going to juror confusion, and I'm trying to figure out what the jury — what picture was painted to the jury at trial. Sure. So, defense counsel argued that Mr. Tran was only involved at Cao. But the difficulty there is that jury findings — you know, the verdict doesn't show that the jury unanimously found an issue that it was never instructed it could find. You know, jury findings are only as good as the instructions on which they're based. And here, the jury wasn't alerted to the possibility that it could find separate conspiracies, separately operating operations, gambling operations, and that it had to be unanimous that the federal elements were met as to any that it found one of the other defendant participated in. Did the defense request that special verdict question? No. And that's why we have the plain error standard. However, here, it was plain error because it affected Mr. Tran's substantial rights and the fairness of the judicial proceedings. In terms of the $5,500 fine, despite that Mr. Tran is indigent, all of the — So what evidence was there in the record that he was indigent? Thank you, Your Honor. All of the evidence in the pre-sentence report shows that Mr. Tran was indigent. He dropped out of high school. There was no lawful employment history of any kind. He was a convicted felon, had no credit history, owed $8,000 in child support, and had to have court-appointed counsel for both his trial and his appeal. So all of the evidence in the record contradicts the assumption that he could afford to pay a $5,500 fine. And that makes this plain error here. At a minimum, this Court should remand the matter because Mr. Tran was denied his right to the district court's finding that he had the ability to pay. That's a statutory requirement under the United States Code that the judge must make a finding of ability to pay before levying a fine. And here, again, all of the evidence in the pre-sentence report contradicted a finding of ability to pay. Counsel, what about — what strikes me about this is I think what the record shows is that your client hadn't — didn't have — didn't have record of ever earning an honest paycheck, any lawful income, and that the judge chose the very low end of the fine. What prevents the judge from taking a look at this person and saying, you know, if nothing else, you're able-bodied, you can flip burgers, you can — you can get a minimum-wage job, and over this period of time, you should be able to come up with the low end of the fine? What's wrong with that? To Your Honor's point about no lawful employment history, that is going to affect Mr. Tran's ability to get a job. And certainly, the Court wasn't — I mean, he doesn't get rewarded for having a criminal past. So at some point, the argument gets to be a little crazy when I take a step back from it. I understand Your Honor's point that he shouldn't be rewarded for having a criminal past, but the fact was that this man had no money, and the United States Code doesn't permit levying a hefty fine on a person who's indigent. So — Well, this goes back to Judge Thomas's — Chief Judge Thomas's question, which is the one I share. There isn't a record of income. There isn't a record of assets. But if nothing else, as I said, because he's able-bodied — I think he is — and he's how old? Very young. I don't recall. I'm just not sure what's — what really violates the spirit of the rule that we have in ordering the very minimum amount on the basis that if nothing else, he can do — Well, I'm afraid that those are assumptions. There's not any affirmative evidence in the record that he is able-bodied, that he does have skills or any kind of ability to earn a living. And certainly, being a convicted felon, he's in debt. Right. But here's what — you know, in the pre-sentence report, it says he committed this offense as part of a pattern of criminal conduct as a livelihood, and therefore, he's not demonstrated his — he's met his burden to show an inability to pay a criminal fine. It also says in the PSR that he has been described as a loan shark. So he had — he was getting income through criminal activity. How does that meet the burden? In order to have court-appointed counsel for his trial and his appeal, he had to go through a financial evaluation, and that showed that he had no income. But at some point, you know, there's the old turnip truck kind of argument, right? I mean, to say that he qualified for a public defender because he didn't have any lawful income is one thing, and it's quite another to say he was incapable of supporting himself. He clearly had been supporting himself, per Chief Judge Thomas's questions, pretty well. Not lawfully, but pretty well. Right. And I don't believe that he's entitled to keep any money that he has from that. In addition, there's no — in other words, this trial, there was nothing but hearsay to suggest that he was a loan shark, for example. That wasn't part of this trial. No one ever testified to that. I'm not certain where that information came from. But, yes, I — forgive me for interrupting, but I understood his defense at trial and certainly on appeal is, yes, yep, I was involved in a criminal gambling operation. Just not involved in this conspiracy over here, but that's what I did for a living. Isn't that right? Yes. And we don't necessarily presume that he has money in offshore accounts. I mean, there's no — But is the problem that the trial court didn't inquire about how capably he supported himself with his illegal gambling operation? I'm not sure I can answer that, Your Honor. But I can say that at a minimum, the trial court was required to make a finding of ability to pay and state facts in support of that ruling, and here it didn't do that. And the statute would have allowed the court to impose a fine of up to $250,000. Is that true? That's correct. Okay. I'd like to ask a question. You challenged the supervised release prohibiting your client from wearing the clothing colors or insignia of the VN gang or any other gang. As I read United States v. Vega, we can read into such conditions a knowledge requirement. Why can't we read into the condition here that when you're wearing a certain color or insignia, you are donning the colors to associate with a particular gang? Why couldn't we uphold the condition on this basis? Two problems there, Your Honor. First is that I'm Mr. Tran is arguing in this appeal that Vega was wrongly decided, that leaving a defendant's rights merely to implication is insufficient protection. If it's not stated in the condition, it doesn't protect him from, for example, wrongful arrest from being arrested and jailed for someone reading that condition as not having a knowledge requirement. In other words, not every probation officer, police officer is familiar with Vega and knows that requirement. And that's why there really is no legitimate reason for not adding an explicit knowledge requirement into these conditions. As far as the propriety of the condition itself, gang colors, as the authorities in the brief show, is a very nebulous concept. In other words, there's a very good case that's showing that in those facts of those case, the putative gang colors were actually the same colors at the local high school. So you can certainly imagine that running into trouble at a football game, particularly in this case, where there was zero evidence that Mr. Tran was a gang member, literally zero. There was some hearsay suggestion from Ahn and Ha Nguyen, the sisters in this case, that they believed that Mr. Lee and Mr. Tran were associated with the VN gang. That was admitted only for the purpose of showing their fear, because fear was an element of the extortion crime that was alleged only against Mr. Lee and not Mr. Tran. Thank you. Thank you, Your Honor. Thank you, counsel. Good morning. May it please the Court. My name is Philip Kopczynski, and I represent the United States. If I may, I'll begin just taking those issues in order. So that's what the waitresses issue. We think this issue fails simply because the defendant did not raise it at the right time. What is the best rationale for redacting those names, counsel, without, I think, it's clear the trial court was surprised by that. So that's the government standard practice, Your Honor. It's to look after the interests of third parties. And I think that's appropriate, especially in this case, given concerns about the violent nature of this gang. Of course, evidence of the fear of these individuals didn't come into trial so much, because that's probably inappropriate to tell the jury about that. But there's plenty of evidence about these being, excuse me, I apologize. So while you're taking the drink of water, it seemed to me that the judge felt that that was a surprise, and I think he used the phrase that the government took it upon himself. How is it typically done? Is there some — wouldn't it have been appropriate to get the court's permission first, or? Perhaps. Given the way this played out, that the court had ordered the production of those materials, I suppose the government could have alerted the court about its standard practice. But, of course, the defense could have done that, too. If the defense was concerned, a simple remedy was to raise it with — excuse me, raise it with the court. How, if I could — how much prior to trial were those documents produced? How much time did the defense have? It's not in the record. It's before trial. The record doesn't indicate exactly how long. All right. But when you say standard practice, I take it it's not the standard practice of the government to redact the names of exculpatory witnesses, is it? Because that would violate Brady. Of course. And I think that's the other interesting dynamic here, is there's really no information to suggest that these would be exculpatory witnesses. Well, potentially exculpatory, to be sure. Well — I didn't understand that to be the government's brief. If it is, I think we're going to use a lot more of your time, frankly. Well, I think this goes to the prejudice issue. I think the government argued below and argues here that the defense has not shown any reason to think that these waitresses had any relevant information. And again, I think even the defendant during trial behaved that way because he could have raised — raised this with the court if he truly thought, look, these are important witnesses to my case, raise it with the court, say, Judge, I need this information. It's important to my case. I granted you that by asking the first question I asked of opposing counsel, why didn't you raise it at a time when the trial could have done something about it? But I understand your response to Chief Judge Thomas' question to be quite different and I just want to be clear whether the government's argument here is that there wasn't a problem with — a Brady problem with redacting those names. Absolutely. We — if we had perceived that these waitresses somehow had exculpatory information to give, it would be a problem to withhold that. There were precipient witnesses to what was going on inside the coffee shop at a time when the owners were alleging that they were basically being knuckled under. So they would have — right? And I think what you're going to tell me in a minute about what you think is the greatest showing of five participants within a 30-day period is going to have to do with observations within the confines of that coffee shop. Well, so how do you get around the fact that those were potentially exculpatory witnesses, please? I guess I just don't see the potential. I don't know that anyone, the defense or the court or anyone has ever identified what exactly they could say that would be exculpatory to the defense. Well, I think their argument is that the only evidence that there were five people involved came from the sisters and that these witnesses would have either impeached their testimony or contradicted it. And you need five. We do. And so two responses to that. One, it is not true that the only evidence of five people involved came from the sisters. Far from it. There were the wiretaps. There were surveillance. Two FBI agents testified about their surveillance activities. Counsel, then perhaps we could do it this way. What is your very best shot at showing that there was evidence of five people within 30 days? What's the strongest example of that, please? Sure. I think there are a number, and I don't know that any is stronger than another, but I can give the court ---- Well, one of the examples in your briefing I think said between the period of, is it February and March, which sounds a lot like a 60-day period. It didn't sound like a 30-day period to me. So I'm looking for a 30-day period, five people. Sure. In the month of May 2012, Mr. Lay coordinates installing the machines at the Ho May with Dunn Dinh. Mr. Dinh. He's always the person that puts the machines in at the cafes. Mr. Tran is involved in that, Defendant Tran, and an individual named Tam Nguyen. I believe Tam Nguyen is the individual who's indicted but then commits suicide, so he's never convicted. Tu Nguyen, a different Mr. Nguyen, is collecting money during that time from the Cao Cafe. I believe Mr. Lee may be also collecting money from the Cao Cafe. That's five right there. So that presupposes that we find Tran's involved in an overarching conspiracy, right? Yes, and that's an important point I do want to address, Your Honor. I think the defense is repeatedly trying to divide them up, and that's simply not consistent with the evidence. Mr. Lau, or Lu, Bo Lu, the sort of kingpin of this whole thing, says right at the outset to the Nguyen sisters, he says, my goal is to have machines in every Vietnamese cafe in San Jose. That's his objective. And then, sure enough, consistent with that, you see Mr. Lee, or Lay, I'm not sure how it's pronounced, later speaking with Mr. Tran in that intercepted phone call, that key phone call. And Mr. Lay says, after learning that someone has put machines in a cafe, someone else, someone outside his organization, he says, no, no, no, no, no. If I allow them to do it there, then it's going to happen to me all over town. So that's consistent with this idea that their objective, the objective of this conspiracy, is not to run machines at a single cafe or to divide up the cafes. That doesn't make any sense. The objective of the conspiracy is illegal gambling in Vietnamese cafes across San Jose. And you see it in Mr. Lay's own words. You could hear it if we had the audio in his own voice talking about that very issue. So we think there's abundant evidence. I could go through more, but there is abundant evidence that this is one conspiracy, and I simply do not see how these waitresses at one of the cafes could have said otherwise. Moreover, I don't think the defense saw it either, because they never raised it. This would have been a very simple matter for the defense to go to the court and say, you know what, judge, you ordered the government to give us those police reports that we wanted. The government gave them to us, but they blacked out the names of the waitresses. Those are defense witnesses at trial. We need that information. And if the court agreed, it would have said, all right, government, turn it over right now. Maybe we do a protective order if you feel there are safety issues. But that could have been resolved before trial. The defense never raised it, and we think that's because the defense didn't actually think these waitresses had anything important to say. And this comes up for the very first time in the Rule 33 after trial. And that's too late. If I may, I want to talk about this issue of separate conspiracies. We've already talked about that a little bit, talking about the evidence. But, Your Honor, you asked a question about plain error, and I think that's critical here. If the defense had requested a jury instruction on multiple conspiracies or one on specific unanimity, and the district court rejected that request, then we might be having a different discussion. Because there are some cases, sometimes this is looked at as a variance, sometimes as more like just a sufficiency of the evidence issue. This is analyzed by this court in different ways in past cases. But bottom line is, the standard is somewhat favorable to the defense. When the defense wants an instruction and asks for it, they have law in their favor from this court. But the defense did not ask for one here. So they cite a number of cases, particularly in reply. There are four cases of this court cited in reply. There's Wolford, Escobar-Dubray, Miguel, and Ruiz. Those are four cases of this court. Actually, I'm sorry, one is an Eleventh Circuit case. Cited in reply about supposedly the standard for giving a defense instruction. The problem is, in every one of those cases, it's the defendant asking for it. And the district court says, no, you can't have it. So, for example, in Wolford, the defendant wanted an instruction on justification for having a gun. The defendant says, I need to have a gun because I believe my life is in jeopardy. That's the facts of Wolford. District court denied it. Said, no, I'm refusing to instruct the jury on justification. And then this court considers that. Here, what would have to be different is the court, the district court, would have had to, without any prompting, just look at this evidence and say, on its own, I'm going to give the jury a specific unanimity instruction. And there's simply no basis in this Court's case law to say that the district court had to do that. Kagan. Counsel, do you agree with opposing counsel's response to my question about whether in the trial court, Mr. Tron's defense was as clearly articulated as it is here? In other words, I understand his defense to be, yes, I was involved in a different gambling operation, but not involved in this conspiracy. I think that's right. Yeah. I think that's basically his defense that he argues to the jury. And I think, in a way, frankly, under this Court's lappier decision, that's a relevant consideration to confusion, the potential for confusion. So, too, with the government's argument. So is it your position, then, that while the government — sorry, the evidence could have supported the specific unanimity instruction, that the problem is that the defendant didn't request it? My position is actually stronger than that. I really don't think the evidence is there to support multiple conspiracies. I think that key call between Mr. Tran and Mr. Lee is just central to the — to showing that there's really not two separate things going on here, Your Honor. The jury didn't convict Mr. Tran of the gambling operation, just the conspiracy, right? Correct. And I think the evidence — we think the evidence is crystal clear, that particularly if you see wrong on that call, the way they talk to one another, the way it's immediately understood what the call's about before anyone's even said anything. The call where Mr. Tran says, I've got this covered, I've already taken care of that one. He says exactly. Mr. Tran's immediate response upon hearing the name of this individual who we never found out who that is, Home Map, don't know who that is, but Mr. Tran immediately says, yeah, yeah, yeah, don't worry, I took care of that. He knows what they're talking about already before anything's even said. At any rate, even if the evidence were more equivocal, the argument was not. The government's argument, the defense argument, it was crystal clear. The government told the jury that it was one conspiracy. There's a quote I have in my brief. It's that the Howe Cafe — I'm sorry, the Home and the Sow Cafe, the two key cafes at issue at trial, the government said it's one and the same conspiracy. So the jury could not have somehow misunderstood what the government was charging in this case. It could not have somehow thought it should convict Mr. Tran, even if it found some other conspiracy he was involved in. It was crystal clear from the evidence and the argument of counsel what the allegation was, what the charged conspiracy was. And so the jury convicted, understanding that. And we think for that reason, Mr. Tran's right to a unanimous jury simply was not in jeopardy. If I may, I'll briefly address the issue of the fine. The sentencing guidelines could not be more clear. It is the inability to pay a fine that requires a finding from the district court, not the ability to pay. Mr. Tran repeatedly tells this Court it is the ability to pay. That is not correct. He cites the Robinson case of this Court. Robinson is not to the contrary. Robinson, I'd like to quote the conclusion of this Court. This is 1994 U.S. v. Robinson. We hold that before imposing a fine pursuant to the guidelines, the district court must determine whether a defendant has established by a preponderance of evidence that he is unlikely to become able to pay any fine in the future. That is crystal clear. It is the inability to pay and whether the defendant has established that. The defendant here, Mr. Tran, did not establish that. The PSR has some of his say-so. He claims to the probation officer that he has some back child support obligations, for example. That's unverified. That's not really evidence in any traditional sense. That's just his say-so. He also says he has his GED. That's on the other side of the equation. If he has his GED, it suggests he has some future earnings capacity. That's not verified either. So the district court looks at all that and the court says, well, I really don't have any information about the defendant's financial situation. True statement. District court got that right. The one thing the district court had is that, of course, Mr. Tran did have appointed counsel, and that's an important factor. But in the absence of anything else from Mr. Tran, he did not meet his burden. And so the district court, in light of other factors, the defendant's very disturbing criminal history, in the district court's words, 22 adult criminal convictions. Mr. Tran was only 42 years old at the time of sentencing. Well, you cite to U.S. v. Robinson, but in the last opinion, on page 1034, they held the district court must determine whether a defendant has established by pretendence of the evidence that he is unlikely to become able to pay any fine in the future, because the district court here never made such a determination. They remanded for an evidentiary hearing. You were talking about the inability versus the ability. Isn't this what Robinson is talking about, that the district court must determine whether a defendant has established that he's unlikely to become able to pay the fine in the future? Yes, that's the Robinson case, Your Honor, and I think that supports our position, because the district court here did exactly that. The district court looked at the information, and the PSR had already said, we don't think the defendant has met the burden. That's what the probation officer said in the PSR. We don't think the defendant has shown inability. The district court looked at that and said, we don't have any information. It didn't say, I weighed all the factors and I've concluded. It just said one sentence. We don't have any information about Mr. Tran's financial situation. So if we agree with you about the burden, where's the finding? Well, because I think there doesn't need to be a finding. The finding would be if the defendant had an inability, present or future. That's the finding required by the guidelines, and that's what Robinson said. The court would make a finding of inability, and the court here did not do so. So in the absence of a finding of inability to pay, the guidelines say, quote, impose a fine in all cases. That's 5E1.2. So it is the inability that requires the finding here not shown by Mr. Tran. And I think the district court rightfully under 3572 as well as 3553A then went to what the district court saw was the more important and driving consideration at this sentencing, which was the defendant's criminal history. As I said a moment ago, this defendant had 22 criminal convictions as a 42-year-old man. And the district court rightfully focused on that, quote, very disturbing criminal history. That's entirely appropriate under 3572 to think about the defendant's criminal history as a factor in then imposing a fine. Frankly, the fine ends up being low-end, pretty modest. And nonetheless, it's a piece of the sentence that the court imposes also for deterrence. So the court talks at length about that and his concern that if there's not a significant, stern sentence, this defendant, Mr. Tran, would just keep offending again and again. over. Could you turn to the arguments about the gang colors and assuming that people he associated with will be out of bounds, if you would? Absolutely. So we think the gang colors condition as well as several of the other conditions that are challenged are appropriate, and the answer to the defendant's concern is the Vega case, Your Honor. We think this Court has said that already. In unpublished decisions, and it's exactly right, that the speculation about being caught up unknowingly in wearing gang colors, the answer is the defendant has to act knowingly, and my colleague said something about the idea of like an arrest or police arresting him. Let's be clear that these are supervised release conditions. They are not crimes. You cannot be arrested on a new crime for wearing gang colors. This is a condition of supervised release. And if the defendant knowingly wears those colors, he could be liable for a violation of supervised release, but nothing more than that. But defense counsel's point was the police would not know when they bring him in for a violation of probation that he knowingly adopted those colors. The mens rea requirement, either the police officer or the probation officer. What's your response? My response is twofold, Your Honor. One, I actually expected a probation officer would be familiar with this Court's case law. I think that's a fair thing for this Court, or to expect of probation officers, to understand how this Court reads conditions of supervision. Vega's an important case of this Court on that issue. Again, I don't even know so much that this is a concern for just a police officer on the street, because I don't think it's typical that a police officer would arrest someone for a supervised release condition. I don't think we have anything on the record on that either way. My other point, though, here is I think Mr. Tran's argument, even if it has some appeal, is foreclosed by Vega. So there was an argument to be made before Vega is decided that, as Mr. Tran says, don't leave this to implication. Don't read in knowing, require the district court to put that word in the condition. That's not what this Court decided in Vega. This Court said, nope, it's fine, we will just read in. We have required it in other cases, but I think I understand your position. And Vega, though, is a gang case. Vega is about a condition relating to association with gangs. So it's directly on point. He has the Seventh Circuit case that went the other way, but this Court, of course, has to follow Vega. Thank you. Thank you very much. Thank you, Counsel.  Thank you, Your Honors. First, with regard to the unanimity, I'm perplexed by the government's argument that because the charging document charged this as a single broad conspiracy, and that's how the trial court charged the jury, that that means there's no problem with the jury instructions here. The point is that the evidence was susceptible of multiple conspiracies, and because of that, the trial court had an obligation to instruct the jury about that possibility, that they could make that finding. And your case for that is? The plain error standard, Your Honor, requires that where the error is plain. The Lapierre case is the one that and Echeverry secondarily. No. My question was, is there a case involving conspiracies where suespone instruction was required? That would be because there was clear entitlement under the plain error standard and under the Lapierre case, that when the evidence is susceptible of multiple conspiracies, the jury has to be instructed on that. And here, as Your Honor pointed out, this was part of the defendant's defense. Whether it was well articulated by counsel is another matter, and that's why we're left here with the plain error standard. But nonetheless, this was part of Mr. Tran's defense, which is why the jury needed to be given the legal underpinning to find that argument. In other words, it can't find things that the court's jury instructions haven't allowed it to find. The court didn't alert the jury to the issue that it could find multiple conspiracies and had to be unanimous. Also, with regard to the government's point, Mr. Lee's saying, you know, if I allow this here, it's going to happen to me all over town. Well, that really proves Mr. Tran's point, that Mr. Tran had his own thing going at the homemade cafe. Mr. Lee heard about it. He pushed it in. He wanted Mr. Tran to use his machines. And that Mr. Tran said, okay, I took care of that for you. But that doesn't prove that Mr. Tran was part of a broad conspiracy, only that he worked with Mr. Lee, in this case, to install gambling machines at one location for which there was no proof of 30 days or $2,000 in a day. One point with regard to the fines, Your Honor. There's some indication. We've been, frankly, speculating about whether Mr. Tran may have made money as a loan shark, for example. Well, how much money did he make? Was he successful? We're speculating about these possibilities. And the reason why is because the trial court didn't make any findings that we can review here. But it wasn't, on the other hand, there was no objection made, and the burden is on the defendant. That's correct. But all the evidence in the pre-sentence report shows, I mean, all of it points to Mr. Tran's indigence. None of it points to some, you know, large bank account that he's holding somewhere. But none of it was a large fine imposed. It was a very modest fine. Well, I think that's a matter of interpretation, Your Honor. I mean, I work on murder cases where the fines are much lower than $5,500. Wasn't that the minimum under the guidelines? For the participants, yes. So the district court said, I don't have any information. I'm going to impose the minimum under the guidelines. But as Your Honors were highlighting, the trial court made no findings of a current or future ability to pay. Finally, with regard to the gang colors, I just want to point out that a person certainly can be arrested for a violation of supervised release. That puts you in proceedings that then could send you back to prison. Thank you, counsel. Thank you. Do you want a minute for rebuttal? All right. Thank you. Thank all of you for your arguments. The case just argued will be submitted for decision and will be in brief recess.
judges: D.W. Nelson, Thomas, Christen